UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

**RHONDA BENTLEY,**

    **Plaintiff,**

v.                                                                      Case No.  2:06-CV-515-FtM-DNF

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security,**

    **Defendant.**

_____/

## OPINION AND ORDER[2]

The Plaintiff filed for Supplemental Security Income ("SSI")[3] payments under Title 42 U.S.C. Sec. 405(g) and 42 U.S.C. 1383(c)(3) of the Social Security Act on September 25, 2002, alleging disability beginning October 13, 1996.[4] (Tr. 57-60). The claim was denied initially and upon reconsideration. On August 19, 2004, a hearing was held before

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Ann B. Barnhart as the defendant in this action. No further action need to be taken to continue this suit by the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2] Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated January 16, 2008. (Doc .# 20).

[3] Because the disability definitions for DIB and SSI benefits are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1(11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11th Cir. 1986).

[4] The Plaintiff amended her alleged onset date to September 25, 2002, at the hearing that was held before the ALJ. [Tr. 21, 200].

Administrative Law Judge Richard E. Ouellette. On June 23, 2005, ALJ Ouellette issued his decision which denied the Plaintiff benefits. (Tr. 21-31). The Plaintiff filed a Request for Review of the hearing decision and the Appeals Council denied same on August 7, 2006, making the ALJ's decision the final decision of the Commissioner. [Tr. 3-5].For the reasons set out herein, the decision is **REVERSED AND REMANDED.**

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

**I.    SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On September 25, 2002, the Plaintiff filed her application for SSI and alleged disability beginning September 25, 2002. The Decision of ALJ Ouellette, dated June 23, 2005, denied the Plaintiff's claim for benefits. (Tr. 21-31). At Step 1, the ALJ found the Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. (Tr. 30). At Step 2, the ALJ found that the Plaintiff's fibromyalgia and depression to be severe impairments based on the requirements in the Regulations. 20 C.F.R. § 416.920(c). At Step 3, the ALJ

found that during the period in question, the Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described in Appendix 1, Subpart P, Regulation No. 4.  The ALJ also did not find Plaintiff's testimony fully credible  regarding her limitations and  that the Plaintiff has the residual functional capacity to perform a significant range of sedentary to light work.  At Step 4, the ALJ determined Plaintiff was unable to perform any of her past relevant work.  The ALJ relied on the vocational expert (VE) and the Medical-Vocational Guidelines as a framework in reaching his decision.  [Tr. 28-29, 235-41].  The ALJ determined the Plaintiff is a "younger individual" 20 C.F.R. § 416.963).  Accordingly, the ALJ found the Plaintiff not disabled at step five of the sequential evaluation.  20 C.F.R. §§416.920(a)(4) and (g).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Walden v. Schweiker*, 672 F.2d 835, 838-9 (11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356,

1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.     REVIEW OF FACTS

The Plaintiff was born on February 15, 1960, and was forty-five (45) years old at the time of the ALJ's decision. [Tr. 57]. The Plaintiff has a high school education and obtained a cosmetology degree. The Plaintiff is licensed as a cosmetologist in the State of Michigan but not in the State of Florida. [Tr. 221]. The Plaintiff's past work experience was as a cosmetologist and a delivery driver. In 2001, the Plaintiff attempted work as a Mary Kay Consultant but was unable to do so because of her fibromyalgia. The Plaintiff is unable to work due to her pain, fibromyalgia and depression.

The Plaintiff began seeing Dr. Kenneth J. Galang of Rehabilitation Consultants of Fort Myers on December 23, 1999. The treatment notes in the file begin on January 25, 2001. The Plaintiff was seen by Dr. Galang for fibromyalgia syndrome and pain. At that time, the Plaintiff was prescribed Paxil and Darvoct and it was noted the Plaintiff was "doing relatively well". [Tr. 138]. The Plaintiff began experiencing gastrointestinal problems with Darvocet so she was switched to Vioxx. Dr. Galang listed the Plaintiff's problems as fibromyalgia syndrome, mild degenerative disc disease. The Plaintiff had a reaction to the Vioxx so her medication was changed to Mobic. The Plaintiff's medications were listed as Soma, Paxil and Mobic. [Tr. 137].

In May of 2001, the Plaintiff was noted with increased weight, increased pain and tenderness in 18 out of 18 tender points. The Plaintiff was also noted with depression. At the May visit in 2001, the Plaintiff related to the doctor that she had traveled by automobile to Michigan. As a result, the Plaintiff complained of soreness in her arms, neck, back and knee.

The August 2001 physical examination again revealed 18 out of 18 tender points along with tenderness of her lumbosacral paraspinals and upper trapezius. The Plaintiff was taking Topamax and Dr. Galang recommended the Plaintiff undergo a course of physical therapy to improve her mobility and decrease her pain. The Plaintiff's insurance company did not approve the physical therapy and by September the Plaintiff was complaining of "an electricity-type symptom into her arms and legs, increased pain with her knees with pain especially upon rising from her bed first thing in the morning." [Tr. 134]. The Plaintiff complained of pain in her feet, ankles and knees and again demonstrated tenderness of 18 out of 18 tender points. {Tr. 134].

The Plaintiff was seen in November 2001 and was still experiencing tenderness in 18 of the 18 tender points despite being on Vicodin, Darvocet and Paxil. The Plaintiff did complain of side effects from the Vicodin and was noted to have "suboptimal" pain control. [Tr. 132, 134].

The Plaintiff was seen by Dr. Galang on December 13, 2001. Again, the Plaintiff displayed tenderness in 18 out of 18 points upon physical examination. The Plaintiff related she was unable to take Vicodin (as she could not function). The Plaintiff was tearful and discussed trying to resume employment as a hairdresser. [Tr. 131]. The Plaintiff had an upper

respiratory infection and a flare up of her fibromyalgia, due to the stressors in her life. [Tr. 130]. Dr. Galang recommended trying Ultracet for her pain, with the Plaintiff to continue with her SOMA (on an as needed basis), and continue with the Paxil and Topamax. [Tr. 131].

On January 18, 2002, the Plaintiff was again documented with fibromyalgia with tenderness in 18 out of 18 points. The Plaintiff was assessed with "[f]ibromyalgia syndrome with exacerbation secondary to a respiratory infection". The Plaintiff was to see her primary care doctor for follow-up because of her history of an "elevated white count". The Plaintiff was advised to continue her medications. [Tr. 130].

The file contains a letter dated March 7, 2002, that Dr. Galang wrote "To Whom It May Concern". In this letter, he stated that he was treating the Plaintiff for her fibromyalgia. He wrote that he was seeing the Plaintiff approximately every month and his treatment consisted of exercise, stretching and medication. Further, that the Plaintiff "[c]onsistently presents with clear speech, appropriate affect and mood and steady gait. She shows no sign of drug overuse or misuse." [Tr. 128].1

On May 8, 2002, the Plaintiff complained of not feeling well - with complaints of pain and fatigue at trying to do "normal things." The Plaintiff advised Dr. Galang that it had taken "all her effort to" attend a class of approximately 5 hours duration. Dr. Galang found the Plaintiff's pain to be severe enough to inject three (3) of the Plaintiff's trigger sites with Marcaine. [Tr. 127].

On June 17, 2002, the Plaintiff returned to Dr. Galang and was seen by J. Anne Petrin, ARNP. The Plaintiff's medication changes were discussed. The Plaintiff was "[t]ense and tender to palpation in the right trapezius as well as her right SI joint. The

Plaintiff elected to receive injections at the trigger point sites and the injections were given to her. [Tr. 125]. On this same date, Dr. Galange wrote another: "To Whom It May Concern Letter" for the Plaintiff. The letter advised that the Plaintiff was being seen for "[f]ibromyalgia, which is a condition that causes chronic pain associated with non-restorative sleep and fatigue". Dr. Galang also wrote: "[M]s. Bentley would have a difficult time maintaining gainful full-time employment. Over the last two months, the office has been involved in adjusting medications to try and achieve the most consistent effect". [Tr. 123]

By November 2002, the Plaintiff was not able to control her pain and was not sleeping. Again the physical examination revealed tenderness in 18 out of 18 tender points. [Tr. 195]. The Plaintiff "[h]as maintained spasming of the upper trapezius, cervical paraspinals and thoracic paraspinals as well". The Plaintiff was given Ultracet for pain management and Topamax for the evening to help with her sleep. [Tr. 195].

The Plaintiff was seen by Dr. J. L. Bernard, a clinical psychologist, on November 26, 2002. The Plaintiff related to Dr. Bernard that she was disabled due to fibromyalgia, chronic fatigue and depression. The Plaintiff's diagnosis: "[A]xis I: Dysthymic Disorder; Axis II: Deferred, Axis III; Fibromyalgia by self-report and records; Axis IV: Occupational, financial and interpersonal stressors are all present; Axis V: Present GAF 57, Highest GAF this year, 57. Prognosis: If her physical condition does not improve, and her personal situation (e.g. the custody battle, etc.) turns out badly, I would expect Ms. Bentley's depression to become more severe if anything. The claimant can handle finances adequately". [Tr. 140-141].

The Plaintiff returned to Dr. Galang for trigger point injections on December 10, 2002 and on December 13. 2002. The Plaintiff continued to have tenderness at all of the 18 tender point locations as well as continuing spasms along her neck, back and her upper trapezius muscle. [Tr. 194].

On December 14, 2002, Dr. Ravipati, completed a Physical Residual Functional Capacity Assessment Form. Dr. Ravipati found the Plaintiff capable of lifting 20 pounds, frequently carrying 10 pounds, standing about 6 hours in an 8-hour workday, sitting about 6 hours in an 8 hour workday, and having unlimited push and/or pull abilities. [Tr. 141]. Dr. Ravipati wrote: "[A]. The symp (sic) are attributable to clinic (sic) symp (sic) fibromyalgia, B. However, the severity to the extent of total disability is not supported by p. (sic) exams". [Tr. 147].

Dr. James B. LeVasseur, Ph.D., completed a Psychiatric Review Technique Form (PRIF) on January 4, 2003. Dr. LeVasseur found the Plaintiff's medical impairments not severe and categorized his medical disposition based on 12.04 Affective Disorders. [Tr. 150]. The Plaintiff had no restriction of activities of daily living, no difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace and no episodes of decompensation, of any extended duration. [Tr. 160]. No evidence of mental disorder was found. The Plaintiff's thought processes were normal and appropriate. "[F]unctional Data: Able to care for children, shops, completes some household chores with limitations attributed to physical rather than mental disorder, socially appropriate. Conclusion; Not severe for mental illness." [Tr. 162].

The Plaintiff was seen in January 2003 with complaints of increased pain in all joints and accompanying stiffness. Again, the Plaintiff tested positive for tenderness in 18 out of 18 tender points. The Plaintiff continued to receive trigger point injections to relieve her back pain, spasming and her headache. [Tr. 193]. In March, the Plaintiff's pain level was at a 9. [Tr. 191].

On April 23, 2003, Dr. Michael R. Stevens, Ph.D., completed a Psychiatric Review Technique Form (PRIF). Dr. Stevens found the Plaintiff's medical impairments not severe and categorized his medical disposition based on <u>12.04 Affective Disorders</u>. [Tr. 164]. The Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace and no episodes of decompensation, of any extended duration. [Tr. 174]. Dr. Stevens' notes reveal the Plaintiff has no mental defects and her problems seem to be physical in nature. [Tr. 176].

At her May 2, 2003, appointment the Plaintiff suffered from nausea, rash and vomiting that she believed was related to the Vicodin. Again tenderness was found at all 18 tender points. The Plaintiff received injections in ten different trigger points for the pain. [Tr. 190]. Medications at that time consisted of Bextra, Ultracet and Percocet for pain.

The Plaintiff was seen by a DDS physician (name illegible) on May 8, 2003. A Physical Residual Functional Capacity Assessment was completed. The physician found the Plaintiff capable of "[l]ifting 20 pounds, frequently lifting 10 pounds, standing 2 hours in an 8-hour work week, sitting six hours in an 8-hour workweek; push and/or pulling unlimited". This physician found the Plaintiff credible as to her history of fibromyalgia and pain. {Tr. 178-185].

In July of 2003, the Plaintiff's pain level was at a 9, with spasm and ten trigger point injections. The Plaintiff related to Dr. Galang events that were contributing to her increased stress levels which also exacerbate her pain. [Tr. 187]. The Plaintiff appeared somewhat better in August, but continued to have generalized body pain and spasms. The Plaintiff received injections in five trigger points. [Tr. 186].

Dr. Galang's treating notes show that the Plaintiff has fibromyalgia and is in constant pain. The Plaintiff has 18 tender points and receives multiple trigger point injections. The Plaintiff has tried various medications to control her pain, to no avail. Dr. Galang, as the Plaintiff's treating physician relates that the unpredictable nature of her fibromyalgia would cause the Plaintiff to have difficulty maintaining employment.

**III. SPECIFIC ISSUES AND CONCLUSIONS OF LAW:**

    **A.    THE COMMISSIONER ERRED IN FAILING TO CREDIT PLAINTIFF'S FIBROMYALGIA CONDITION AND HER ASSOCIATED SYMPTOMS OF FATIGUE, HEADACHES, WIDESPREAD CONSTANT MUSCULOSKELETAL PAIN AND CONCENTRATION DIFFICULTIES.**

Plaintiff asserts the Administrative Law Judge erred in finding Plaintiff's impairments were not severe and she was not disabled. The ALJ only credited the Plaintiff with fibromyalgia and depression. The Administrative Law Judge failed to properly evaluate all Plaintiff's complaints of pain and diagnosis of fibromyalgia at Step Two. The failure of the ALJ to credit the Plaintiff's symptoms means the ALJ failed to credit the Plaintiff's symptoms of widespread musculoskeletal pains, her interrupted sleep pattern, difficulty concentrating and fatigue. (Tr. 30).

Several circuits have recognized that fibromyalgia is capable of causing severe, disabling pain. The Sixth Circuit has recognized that fibromyalgia causes severe musculoskeletal pain that is accompanied by stiffness and fatigue due to sleep disturbances. *Lisa v. Secretary of HHS*, 940 F.2d 40 (2nd Cir. 1991) (quoting *Preston v. Secretary of HHS*, 854 F.2d 815 (6th Cir. 1988). The Eighth Circuit has also recognized that fibromyalgia can result in total incapacitation and that an individual's subjective pain and discomfort can limit her work capacity. *Prince v. Bowen*, 894 F.2d 283 (8th Cir. 1990); *Cline v. Sullivan*, 939 F.2d 560 (8th Cir. 1991) . See also *Ttsarelka v. Secretary of HHS*, 842 F.2d 529 (lst Cir. 1988). See also *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005), and the unpublished decision in *Stewart v. Apfel*[5], No. 99-6132, 245 F.3d 793 (Table), 2000 WL 33125958, 2000 U.S. App. Lexis 33214(11th Cir. Dec. 20, 2000). Further, the Eleventh Circuit has addressed the problems associated with fibromyalgia, *Rutledge v. Barnhart*[6], 391 F. Supp. 2d 1057 (NDAL, 2005).

According to Social Security Ruling 88-13 and the Eleventh Circuit pain standard, once a [plaintiff] has documented the existence of a medically determinable impairment which is of such a severity to reasonably be expected to produce the alleged pain, that [plaintiff's] complaints of pain must be considered. *Landry v. Heckler*, 782 F.2 1551 (11th

---

[5] Unpublished opinions of this court are not binding precedent. See 11th Cir. R. 36-2. However, this case is cited for the purpose of demonstrating the 11th Circuit's agreement with sister circuits that fibromyalgia is considered a medical condition that can give rise to pain.

[6] In that case, Judge Guin quoted extensively from Chief Judge Posner of the 7th Circuit Court of Appeals regarding the problems associated with a fibromyalgia case. *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996).

Cir. 1986). Based on the evidence, the Administrative Law Judge did not base his decision on substantial evidence. Plaintiff's physical condition did cause her severe pain as the record shows.

### B. THE ALJ FAILED TO PROPERLY EVALUATE THE MEDICAL EVIDENCE AND OPINIONS

#### 1. Treating Physicians

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v.* Callahan, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Commissioner of Social Security*, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527 (d). If a treating physician's opinion on the issue(s) of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is consistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted the treating physicians' report where the physician was unsure of the accuracy of his findings and statements).

Dr. Galang has been the Plaintiff's treating physician since December of 1999. Dr. Galang's examinations of the Plaintiff clearly show that she has the classic symptoms of fibromyalgia as outlined. The Plaintiff has consistently demonstrated 18 out of 18 tender

points upon examination. [Tr. 195, 121, 130, 131, 132, 135, 136]. The Plaintiff was continuously in pain, had spasms and received multiple medications during her treatment, as well as trigger point injections. Dr. Galang's records and medical findings support the nature and severity of Plaintiff's condition and his opinion that the Plaintiff is not able to work; and is therefore disabled.

### 2. The Commissioner Failed to Carry His Burden at Step Five of the Sequential Evaluation Process

The fifth and final step of the evaluation process requires the Commissioner to prove that other jobs exist in the national economy that the Plaintiff can perform despite her disability[7]. The ALJ relied on a vocational expert (VE) and the Medical-Vocational Guidelines as a framework in reaching his decision. [Tr. 28, 29]. 20 C.F.R. pt. 404, subpt. P, app.2, rules 201.28 and 202.21.

At the hearing, the ALJ presented the vocational expert, Joyce Ryan with the following hypothetical question:

> "[O]kay Assume an individual who is the same age, education and work experience as the claimant who has the following residual functional capacity, capable of sedentary to light work with a sit/stand option with an occasional limitation for bending, stooping, crouching and kneeling. Is capable of performing routine tasks that allow for occasional lapses in concentration. Are there any jobs?"

---

[7] At step four of the sequential evaluation, 20 C.F.R. §§ 416.920(a),(e) and (f), the ALJ determined the Plaintiff's residual functional capacity (RFC) to be at a sedentary to light work level, with a sit/stand option, occasional limitations for bending, stooping, crouching and kneeling and that the Plaintiff was capable of performing routine repetitive tasks which allowed for occasional lapses in concentration. [Tr. 28, 30]. Thus, having determined the Plaintiff's RFC, the ALJ continued at step four and found the Plaintiff was unable to perform her past relevant work (PRW). [Tr. 30].

In response to this hypothetical question, the VE, Joyce Ryan testified that a person with these limitations could perform a job as a school bus monitor, gate guard, ticket taker, and toll collector. The VE was then examined by the Plaintiff's counsel and presented with the following facts: (1) that the Plaintiff's fibromyalgia and pain are increased by stress; (2) that fibromyalgia is unpredictable and could result in a considerable amount of absenteeism on any of these jobs; and (3) that conditions such as temperature extremes (for the toll collector or gate guard) could also adversely affect the Plaintiff's working ability. The VE then replied that stress would eliminate the school bus monitor position [noise level, etc.]; temperature extremes and a level of absenteeism of even "missing 3 days a month" would eliminate all jobs. [Tr. 238-239].

## IV. CONCLUSION

In the instant case, the ALJ failed to follow the proper procedures as set forth in the Regulations and case law regarding:

(1) the evaluation and the weight given the medical evidence and medical source opinions of record;

(2) the analysis of Plaintiff's pain and credibility, and

(3) the testimony of the vocational expert.

Remand to the Commissioner for further fact-finding is unnecessary because all of the essential evidence was before the Appeals "Council when it denied review, and the evidence establishes without any doubt that the Plaintiff was disabled". *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

Bentley v. Commissioner

2:06-cv-515-FtM-DNF

For the reasons stated above, the decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. §§ 405(g) and **REMANDED** for calculation of supplemental security benefits based on Plaintiff's September 25, 2002, date of onset.

**DONE and ORDERED** at Ft. Myers, Florida, this 29th day of February 2008 .

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to
All Counsel of Record